**STATE of Missouri, Respondent,**

v.

**David L. HOBBS, Appellant.**

**No. WD 60430.**

Missouri Court of Appeals,
Western District.

March 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2003.

Application for Transfer Denied
July 1, 2003.

Kent Denzel, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

A jury convicted David L. Hobbs of the class B felony of abuse of a child, section 568.060.1(1), RSMo 2000.[1] He was sentenced, as a prior and persistent offender, to fifteen years in prison. Mr. Hobbs raises three points on appeal. First, Mr. Hobbs claims that the trial court plainly erred in allowing a section 491.075 hearing to proceed in his absence. Second, he claims that the trial court erred in overruling his motion for acquittal at the close of the evidence and in entering a judgment finding him guilty of the class B felony of abuse of a child because the evidence was insufficient to establish that the victim suffered serious emotional injury. As an alternative to his second point, Mr. Hobbs argues in his third point that the trial court plainly erred in overruling his objection and permitting the treating doctor to express an opinion as to whether the victim suffered serious emotional injury because he was not qualified to express such an opinion. This court finds that Mr. Hobbs waived his right to be present at the section 491.075 hearing, the evidence was sufficient to establish that the victim suffered serious emotional injury, and the trial court did not plainly err in permitting the doctor to express an opinion as to whether the victim suffered serious emotional injury. Accordingly, the judgment is affirmed.

## Factual and Procedural Background

In July 2000, Mr. Hobbs was living with his girlfriend, Carla Stephens, and her two daughters, B.S. and A.S. At that time, B.S. was eight years old and A.S. was three years old. Around midnight on July 27, Mr. Hobbs was holding A.S., who sometimes called Mr. Hobbs "Daddy," on his lap and telling her repeatedly to tell him that she hated him. A.S. refused to say that she hated him, and instead said, "I don't hate you, daddy, I love you." Mr. Hobbs told A.S. that she was lying, and if she did not stop lying, he was going to send her to the corner. He then sent her to the corner.

Ms. Stephens, who was present during this encounter, told Mr. Hobbs, "David, she said she loves you. Leave her alone." Mr. Hobbs told Ms. Stephens to "stay out of it." Mr. Hobbs told A.S. to get out of the corner and come to him. She sat on his lap again, and he began punching her in the chest. He also started biting A.S., including biting her on her bottom. At some point, he pulled her by the ears. A.S. was crying, and Mr. Hobbs told her that he was going to tie her to his car and drag her down the street. A.S. began crying hard at this point, and Ms. Stephens tried to get her to stop crying by telling her that Mr. Hobbs was not going to do anything to her. A.S. would not listen to Ms. Stephens, however, and every

---

**1.** All statutory references are to the Revised Statutes of Missouri 2000.

time she looked at Ms. Stephens or tried to talk to her, Mr. Hobbs would scream at her, "[D]id I say you could look at her, did I say you could talk to her." Mr. Hobbs then told A.S. to tell her mother "bye" because he was going to tie her to the car and drag her down the street. A.S., who was visibly scared and crying hard, told her mother "bye" and went outside. When A.S. came back in, Mr. Hobbs told her that "he was just picking on her and tormenting her because he knew it made her mad."

About 44 hours after this incident, Mr. Hobbs and Ms. Stephens had a fight during which Ms. Stephens tried to run Mr. Hobbs over with her car. Ms. Stephens then left to go to her mother's house. On her way to her mother's house, Ms. Stephens called her mother and told her to call the police.

Officer Harold Chadwick Anderson was the police officer who arrived at Ms. Stephens' mother's house in response to the call. He immediately noticed that A.S. had bruises on her face and chin. When Officer Anderson asked A.S. who had caused the bruises to her face, she responded, "Daddy." He asked if there were any other bruises. A.S. raised her arms and Ms. Stephens showed Officer Anderson more bruises.

A.S. was then taken to the emergency room of the Bates County Hospital. The emergency room physician, Dr. Herbert Hall, III, noticed that A.S. had bruising all over her body, particularly on her buttocks, thighs, face, ears, and the mastoid processes behind her ears. Additionally, Dr. Hall found bite marks on A.S.'s left cheek and left buttock, and a possible bite mark on her right buttock. The width of the bite marks indicated that an adult's mouth, and not a child's mouth, had made them. Dr. Hall also noted that, when he conducted a sexual abuse examination, A.S. showed no hesitation or shyness during the examination. Rhonda Talley, a social worker with the Division of Family Services in Bates County, interviewed A.S. at the hospital. When asked by Ms. Talley what had happened to her, A.S. told her that Mr. Hobbs had bitten and hit her, and described his other actions.

Subsequently, Mr. Hobbs was charged by information with the class B felony of abuse of a child, section 568.060.[2] On June 8, 2001, the trial court held a pretrial section 491.075[3] hearing to determine

---

2. Abuse of a child occurs when a person "[k]nowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old[.]" Section 568.060. Abuse of a child is a class C felony, unless it is raised to a class B felony because "the person inflicts serious emotional injury on the child." Section 568.060.3(1). Serious emotional injury is defined as "an injury that creates a substantial risk of temporary or permanent medical or psychological damage, manifested by impairment of a behavioral, cognitive or physical condition." Section 556.061(27).

Ms. Stephens was also charged and pled guilty to the felony of endangerment of a child for the events of July 27, 2000. At the guilty plea hearing, Ms. Stephens admitted that she had failed to protect A.S. from Mr. Hobbs.

3. Section 491.075 provides that:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566, or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2)(a) The child testifies at the proceedings; or
(b) The child is unavailable as a witness; or
(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trau-

whether Officer Anderson and Ms. Talley could testify as to hearsay statements made by A.S. Mr. Hobbs was not present at this hearing. At the hearing, the only witnesses were Officer Anderson and Ms. Talley, who testified as to the statements A.S. had made to them. Officer Anderson testified that when he asked A.S. who had put the bruises and marks on her, she answered, "Daddy." Officer Anderson also described how when he asked A.S. if she had any other bruises, she lifted her arms and showed him more bruises. Ms. Talley testified that when she asked A.S. what had happened to her, she answered, "David bite me on my face and my butt," and "[h]e make me stand in the corner. I got out and sit on his lap, and he said he hates me and punched me in the stomach and stuff." Ms. Talley further testified that A.S. told her that Mr. Hobbs "also bite my legs, and he say he would tie me on the car and drag me." When Ms. Talley asked A.S. why he did this to her, she answered, "Because I whine." Defense counsel cross-examined both witnesses and argued against the admission of A.S.'s hearsay statements. At the close of the hearing, the court found "that the element of the statute regarding the statements possibly being admissible as to them being made under circumstances at a time and the content of the statements being such that they provide sufficient indicia of reliability . . . is met, at least according to the evidence the Court has heard here today." The court noted that "whether the other standards of [section 491.075] are met at the time those statements are offered at trial, or whether there's other evidence prior to their being offered at trial that might change that position, that will be something we'll address at that time."

A jury trial was held on June 11. At trial, Ms. Stephens, Dr. Hall, Ms. Talley, and Officer Anderson testified for the State. Dr. Hall, Ms. Talley, and Officer Anderson testified about their observations and interactions with A.S. When testifying as to these interactions, Ms. Talley and Officer Anderson testified to statements made by A.S. Dr. Hall also testified that, in his professional opinion, based on a reasonable degree of medical certainty, A.S. suffered a serious emotional injury because of Mr. Hobbs' abuse of her. At the end of the trial, the jury convicted Mr. Hobbs of the class B felony of abuse of a child.

After trial, a hearing was held for the presentation of additional evidence relevant to the admissibility of A.S.'s out-of-court statements under section 491.075, in response to Mr. Hobbs' claim in his motion for new trial that the trial court did not make the required finding under section 491.075.1(2)(c) that A.S. would suffer significant emotional or psychological trauma if she had to testify in Mr. Hobbs' presence. At this hearing, Janice Williams, A.S.'s counselor from August 15, 2000, to May 18, 2001, testified that A.S. would have suffered serious emotional trauma if she had been required to testify at the jury trial. The trial court found that if it had been presented with this evidence at the presentence hearing or during trial, it "would have found at that time that significant emotional or physical [sic] would have resulted from the child testifying in the physical presence of [Mr. Hobbs]." The trial court then overruled Mr. Hobbs' motion for a new trial.

Thereafter, the court sentenced Mr. Hobbs, as a prior and persistent offender, to fifteen years imprisonment, to run consecutively to another sentence Mr. Hobbs

---

ma which would result from testifying in the personal presence of the defendant

makes the child unavailable as a witness at the time of the criminal proceeding.

was already serving. Mr. Hobbs made numerous complaints about his trial counsel at the sentencing hearing, but he did not object to trial counsel proceeding with the section 491.075 hearing in his absence. This appeal followed.

### No Plain Error in Holding the Section 491.075 Hearing in Mr. Hobbs' Absence

In his first point, Mr. Hobbs argues that the trial court plainly erred in allowing the section 491.075 hearing to proceed without him in the courtroom. Mr. Hobbs claims that this violated his constitutional rights to due process · of law, to confront witnesses against him, and to a fair trial, because the hearing "was a critical stage of the criminal proceeding where the alleged child victim did not testify at trial."

At the start of the section 491.075 hearing, the court noted that Mr. Hobbs was not present and asked defense counsel whether he wanted Mr. Hobbs there. Defense counsel and the court then had the following exchange:

[Defense counsel]: No. I don't think any of this is anything he could add anything to, so—

The court: He's at the Henry County Jail—

[Defense counsel]: He is.

The court:—which is about a block away, and you don't feel any need—

[Defense counsel]: I've been over to see him and talked to him, and I don't really think it would be of any importance for him to be here.

The court: Okay.

[Defense counsel]: He didn't say he wanted to be, so—

The court: Okay. We'll proceed, then, in his absence.

Before the start of the trial, the State suggested that the trial court ask Mr. Hobbs if he was aware that it had held a pretrial hearing on the admissibility of evidence under section 491.075 and Mr. Hobbs status as a prior and persistent offender. Mr. Hobbs said he found out about the hearing after it had occurred. Defense counsel then explained that he had not told Mr. Hobbs about the hearing before it occurred because it had "kind of escaped" him that the court was holding a section 491.075 hearing. After further discussion, the court told Mr. Hobbs that if he wanted a new hearing on his prior and persistent offender status, he could have one. The court said that it would not hold another section 491.075 hearing, however, because it considered the hearing an interlocutory matter, subject to whatever evidence was offered and admitted at trial.

During the trial, the State offered the testimony of Officer Anderson and Ms. Talley concerning the statements of A.S. Defense counsel objected on the ground that the testimony was hearsay. In response, the State argued that there had been a section 491.075 hearing during which the court determined that the testimony met "some threshold of credibility," so the testimony was admissible and was for the jury to weigh. The court overruled the objection on the basis that the hearsay objection was overcome by section 491.075.

■ On appeal, Mr. Hobbs claims that his absence from the section 491.075 hearing violated his right to due process of law and his right to confront witnesses under the United States and Missouri Constitutions. Because Mr. Hobbs knew of this issue at the beginning of trial but did not object to his absence at that time, did not object at trial to the admission of the section 491.075 evidence on the ground of his absence, did not ask for a rehearing of the section 491.075 motion in its entirety, and did not raise it in his motion for new trial, but challenged the section 491.075

ruling on other grounds, this court reviews for plain error. *See State v. Middleton,* 998 S.W.2d 520, 525 (Mo. banc 1999). Under plain error review, "[r]elief will be granted only if substantial rights are involved and the [c]ourt finds a manifest injustice or miscarriage of justice." *Id.*

 Mr. Hobbs first contends that his absence from the section 491.075 hearing violated his constitutional right to due process of law. "A defendant has a ' "due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " ' " *Id.* at 526 (quoting *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). " '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Snyder,* 291 U.S. at 108, 54 S.Ct. at 333)). "The focus is whether, on the whole record, the defendant could have done or gained anything by attending." *Middleton,* 998 S.W.2d at 526.

 A defendant's due process right to be present can be waived by the defendant or by the defense counsel, however. *See State v. Johns,* 34 S.W.3d 93, 116 (Mo. banc 2000) (holding that a defendant's due process right to be present at a critical stage of the proceeding can be waived); *State v. Malone,* 951 S.W.2d 725, 731 (Mo. App.1997) (holding "[t]he right of a defendant to be present at any stage of a criminal proceeding that is critical to its outcome has no application where there is a waiver of defendant's presence by his counsel."). For example, the Missouri Supreme Court, when discussing a defendant's rights to due process and confrontation, held that the defendant waived his right to be present when his trial counsel did not object to the defendant's absence at persistent offender hearing and the defendant did not object when he was informed that the hearing had taken place without him. *State v. Madison,* 997 S.W.2d 16, 21 (Mo. banc 1999). Similarly, here, Mr. Hobbs' trial counsel stated that he did not want Mr. Hobbs to be present at the section 491.075 hearing, and, once he learned about the hearing, Mr. Hobbs did not object to its taking place in his absence. Thus, Mr. Hobbs' waived his due process right to be present at the section 491.075 hearing, and the trial court did not plainly err in holding it without him.

 In addition to his argument that his absence from the section 491.075 hearing violated his due process rights, Mr. Hobbs also claims that his absence violated his right to confront witnesses under the United States and Missouri Constitutions. Under the Missouri Constitution, "in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel." MO. CONST. art. I, section 18(a). This right, however, can be waived, and "[w]aiver occurs when neither defendant nor defense counsel requests the defendant's presence." *Middleton,* 998 S.W.2d at 525. Here, Mr. Hobbs' counsel stated that he did not want Mr. Hobbs to be present at the section 491.075 hearing. Thus, under the Missouri Constitution, the trial court did not plainly err in holding the section 491.075 hearing in Mr. Hobbs' absence.

Nevertheless, the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. The United States Supreme Court "has emphasized that 'a primary interest se-

cured by [the Confrontation Clause] is the right of cross-examination.'" *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (quoting *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)).

In discussing the right to confrontation guaranteed by the United States Constitution, the Missouri Supreme Court has stated that "[a] defendant has a Sixth Amendment Confrontation Clause right to be present, and a due process right to be present, 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge[.]'" *State v. Smulls,* 935 S.W.2d 9, 17 (Mo. banc 1996) (quoting *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484.) The Court went on to hold, in *Smulls,* that the defendant's Sixth Amendment confrontation right was not violated when a gender *Batson* hearing[4] was conducted in the defendant's absence because no evidence or witnesses were presented against the defendant and the hearing "did not require defendant's input nor did it call for any decision or reaction from defendant." *Id.* Similarly, this court has held that a defendant's absence from a pretrial hearing where peremptory challenges were made did not violate the defendant's Sixth Amendment right to confrontation because there were "'no witnesses to confront or evidence against defendant.'" *State v. Miller,* 981 S.W.2d 623, 634 (Mo.App.1998) (quoting *Smulls,* 935 S.W.2d at 17). In contrast, the Southern District of this court has held that a defendant's Sixth Amendment right to confrontation was violated when the State introduced a witness's deposition as substantive evidence at trial, but the defendant had not been afforded the right to confront the witness face-to-face at the deposition or at trial. *State v. Glaese,* 956 S.W.2d 926, 932–933 (Mo.App. 1997).

Here, the pretrial section 491.075 hearing is more like a pretrial deposition than like a pretrial *Batson* or peremptory challenge hearing. The purpose of a section 491.075 hearing is to determine whether a hearsay statement made by a child victim "provide[s] sufficient indicia of reliability" such that the statement can be admitted at trial. Section 491.075.1(1). At Mr. Hobbs' section 491.075 hearing, two witnesses for the State, Officer Anderson and Ms. Talley, were present and testified about what A.S. had told them. Because the nature of the section 491.075 hearing involved witnesses to confront and evidence against Mr. Hobbs, Mr. Hobbs had a Sixth Amendment confrontation right to be present at the hearing.

▮ A defendant's Sixth Amendment right to confrontation can be waived, however. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966). *See also Phillips v. Wyrick,* 558 F.2d 489, 496 (8th Cir.1977); *Carr v. State,* 829 S.W.2d 101, 102 (Mo.App.1992). For this waiver of the right to confrontation "to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart,* 384 U.S. at 4, 86 S.Ct. at 1247 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). *See also Phillips,* 558 F.2d at 496 ("A waiver of the confrontation right must be effected personally by an accused who is acting intentionally and knowledgeably."). Additionally, "a choice

---

4. A *Batson* hearing is conducted to determine if the State used a peremptory challenge to exclude a juror based on race or gender in violation of the Equal Protection Clause of the United States Constitution. *Smulls,* 935 S.W.2d at 14, 16–17 (citing *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986)).

to waive made by counsel not participated in by petitioner does not automatically bar relief to the petitioner." *Id.* Relying on this principle, the court in *Carr* held that a defendant's Sixth Amendment right to confrontation was validly waived by his trial counsel because the defendant did not object when his counsel agreed, in front of him, that the prosecutor could read from a witness's deposition taken in the defendant's absence when the witness refused to testify at trial. 829 S.W.2d at 103. *See also Loggins v. Frey,* 786 F.2d 364, 368 (8th Cir.1986) (holding that defendant acquiesced in his counsel's waiver of his Sixth Amendment right when defendant did not "personally interject[ ] his objection" to his counsel's decision to allow a witness's prior trial testimony to be read to the jury).

■ When the defendant objects to, rather than acquiesces in, counsel's waiver, however, no waiver of rights occurs. *See Brookhart,* 384 U.S. at 7–8, 86 S.Ct. at 1248–49. In *Brookhart,* the United States Supreme Court held that trial counsel did not validly waive his client's Sixth Amendment right to confrontation when counsel agreed to a prima facie trial,[5] which effectively "shut off the [client's] constitutional right to confront and cross-examine the witnesses against him," while his client insisted in open court that he wanted to plead not guilty. *Id.*

■ In this case, Mr. Hobbs' counsel stated, at the start of the section 491.075 hearing, that he did not want his client to be present and Mr. Hobbs had not told him he wanted to be present. It was later determined, however, that Mr. Hobbs'

counsel had not told Mr. Hobbs about the section 491.075 hearing and Mr. Hobbs did not learn about the hearing until after it had occurred. Thus, Mr. Hobbs could not have knowingly and intentionally waived his confrontation right at the section 491.075 hearing because, at that time, he did not even know that. the court was conducting a hearing at which witnesses against him would be present and examined.

■ Nevertheless, Mr. Hobbs' conduct after he learned that the section 491.075 hearing had taken place without him shows that he not only acquiesced in the waiver of his confrontation right, but, in effect, waived the right himself. At the hearing held at the beginning of trial, Mr. Hobbs stated that he had learned of the section 491.075 hearing after it had occurred, but he did not object to the holding of the hearing in his absence or request a new hearing. " 'Failure to assert an objection based upon the right of confrontation at the earliest possible opportunity constitutes a waiver of that objection.' " *Madison,* 997 S.W.2d at 21 (quoting *State v. Smith,* 727 S.W.2d 188, 190 (Mo.App. 1987)). In addition, at trial, Mr. Hobbs did not object to the admission of the testimony of Officer Anderson and Ms. Talley on the ground that he was not present at the pretrial hearing where the admissibility of their testimony was determined. Moreover, although Mr. Hobbs raised the issue of his trial court's failure to make the requisite findings under section 491.075 in his motion for a new trial, he did not raise the issue of his absence at the hearing as a basis for a new trial.[6]

---

**5.** A prima facie trial was described by the trial court as one "where the defendant, not technically or legally, in effect admits his guilt and wants the State to prove it." *Brookhart,* 384 U.S. at 6, 86 S.Ct. at 1248. The Supreme Court also noted that, at a prima facie trial,

the defendant does not present any evidence or cross-examine any of the State's witnesses. *Id.* at 7, 86 S.Ct. 1245.

**6.** If Mr. Hobbs had made the complaint about his absence from the section 491.075 hearing

Finally, at the beginning of trial and at the sentencing hearing, Mr. Hobbs made numerous oral and written complaints about his trial counsel's performance, but he did not include an objection to trial counsel's failure to tell him about the section 491.075 hearing until after it had occurred, or trial counsel's failure to request his presence at that hearing. Thus, Mr. Hobbs waived his right to be present at the section 491.075 hearing by his conduct before, during, and after trial. As such, it was not error, plain or otherwise, for the trial court to hold the section 491.075 hearing in Mr. Hobbs' absence. Point denied.

In his second and third points, Mr. Hobbs raises two arguments concerning the evidence of whether A.S. suffered a serious emotional injury because of his abuse. In his second point, Mr. Hobbs claims that the trial court erred in overruling his motion for judgment of acquittal and entering a judgment finding him guilty of the class B felony of abuse of a child because the evidence was insufficient to establish beyond a reasonable doubt that A.S. suffered serious emotional injury. In his third point, Mr. Hobbs argues that the trial court plainly erred in overruling his objection to permit an unqualified person, Dr. Hall, to express his opinion that A.S. suffered serious emotional injury because of Mr. Hobbs' abuse. Since Dr. Hall provided the only evidence that A.S. suffered serious emotional injury, this court must first determine whether the trial court plainly erred in allowing him to give an opinion on that issue before it can decide whether the evidence was sufficient to establish that she suffered serious emotional injury. Accordingly, this court will ad-

dress Mr. Hobbs' second and third points in reverse order.

## No Plain Error in Allowing State's Expert Witness to Testify

 In his third point, Mr. Hobbs' asserts that the trial court plainly erred in overruling his objection and allowing Dr. Hall to express his opinion that A.S. suffered serious emotional injury from Mr. Hobbs' abuse because Dr. Hall was not qualified to express such an opinion. As Mr. Hobbs did not include this issue in his motion for a new trial, he asks for plain error review. *Middleton,* 998 S.W.2d at 525. Under plain error review, "[r]elief will be granted only if substantial rights are involved and the [c]ourt finds a manifest injustice or miscarriage of justice." *Id.*

At trial, the State, after asking Dr. Hall various questions about his observations of A.S. during her examination, asked:

Q. All right. Doctor, in your opinion, based on a reasonable degree of medical certainty, did this child suffer a serious emotional injury? And I'll define that injury for you. That would mean an injury that creates a substantial risk of temporary or permanent medical or psychological damage manifested by impairment of a behavioral, cognitive or physical condition?

At this point, Mr. Hobbs' objected to this question because of lack of foundation. The trial court sustained the objection. Later, the State asked Dr. Hall about his training and education. Dr. Hall testified that, as a registered nurse, he was employed as a trauma room specialist from

in his motion for new trial, the trial court could have addressed it at the post-trial hearing. The trial court could have addressed this claim because it heard additional evidence regarding section 491.075 and made additional rulings regarding the pretrial section

491.075 hearing. *See Gagnon,* 470 U.S. at 528, 105 S.Ct. at 1485 (noting, in a discussion of defendant's right to be present under Federal Rule 43, that "post-trial hearings may often resolve this sort of claim.").

1978 to 1993. Dr. Hall further testified that in 1997, he received his doctorate in osteopathy and, in 2000, he completed his family medicine residency, which is his principle area of practice. The State next asked Dr. Hall if, "in [his] professional opinion, based on a reasonable degree of medical certainty, did this child suffer serious emotional injury—." Mr. Hobbs objected on the ground that there was not a proper foundation laid to qualify Dr. Hall to answer that question. The parties then argued their positions outside of the hearing of the jury. After hearing their arguments, the trial court concluded:

> The Court reads that the definition—while the term is 'serious emotional injury,' the definition states, 'substantial risk of temporary or permanent medical or psychological damage manifested in the form of behavior or cognitive or physical condition.'
>
> If the question by the State includes the full definition, I'm going to overrule the objection and allow [Dr. Hall] to testify. If the term is not defined, I'm not sure I believe this doctor is qualified to testify to emotional injury the way it is defined by the statute as including medical damage and physical condition. I believe that he is qualified to testify to that as long as the definition is clearly a part of the term.

The State then asked Dr. Hall,

> Q. Actually, in your professional opinion, based on a reasonable degree of medical certainty, that this child suffered a serious emotional injury, and I'll define that for you, I will mean an injury that creates a substantial risk of permanent—or temporary or permanent psychological damage manifested by impairment of a behavioral, cognitive or physical condition?
>
> A. Yes.

Although this question misstated the statutory definition of "serious emotional injury" by omitting the word "medical" from the phrase "that creates a substantial risk of temporary or permanent medical or psychological damage," Mr. Hobbs did not object to the question or to the answer.

Mr. Hobbs now argues on appeal that the trial court plainly erred in overruling his objection that Dr. Hall was not qualified to express his opinion that A.S. suffered serious emotional injury and in permitting Dr. Hall to express his opinion. Mr. Hobbs mischaracterizes the trial court's ruling in his claim, however, because the trial court did not overrule Mr. Hobbs' objection. Instead, the trial court ruled consistently with his objection, in that its ruling indicated that the question, as asked, was not proper. The trial court stated that if the prosecutor rephrased the question to include the statutory language, it would overrule the objection. Therefore, the trial court did not err, plainly or otherwise, in "overruling" Mr. Hobbs' objection to letting Dr. Hall give his opinion about whether A.S. suffered serious emotional injury because the trial court did not actually "overrule" Mr. Hobbs' objection.

In the second sentence of his point, Mr. Hobbs acknowledges that the trial court ruled consistently with his objection. He notes that "[t]he court only permitted the State to ask Dr. Hall the question in statutory terms—a substantial risk of *medical or psychological* damage—but the prosecutor asked only about psychological damage and omitted the word 'medical.'" Because Mr. Hobbs did not object to the prosecutor's rephrasing of the question, he is really asking this court to hold that the trial court plainly erred in failing to intervene, *sua sponte*, to prevent the witness from answering a question that was not phrased according to its instruction. This

court declines to so hold. As such, Mr. Hobbs' third point is denied.

### Evidence Sufficient for Jury to Find Serious Emotional Injury

 Since the trial court did not plainly err in allowing Dr. Hall to give his opinion that A.S. suffered serious emotional injury, this court will now address Mr. Hobbs' second point. In his second point, Mr. Hobbs claims that the evidence was insufficient to support a finding that A.S. suffered serious emotional injury, such that his offense could be raised from a class C to a class B felony.

In this case, Mr. Hobbs was charged with the offense of abuse of a child. Under section 568.060.1(1), "[a] person commits the crime of abuse of a child if such person [k]nowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old[.]" The crime of abuse of a child is a class C felony, unless "[i]n the course thereof the person inflicts serious emotional injury on the child, ... in which case the crime is a class B felony." Section 568.060.3(1). "Serious emotional injury" is defined as "an injury that creates a substantial risk of temporary or permanent medical or psychological damage, manifested by impairment of a behavioral, cognitive or physical condition." Section 556.061(27). "Serious emotional injury shall be established by testimony of qualified experts upon the reasonable expectation of probable harm to a reasonable degree of medical or psychological certainty[.]" *Id.*

At trial, Dr. Hall testified that, in his opinion, to a reasonable degree of medical certainty, A.S. suffered serious emotional injury as a result of Mr. Hobbs' conduct. Mr. Hobbs admits that Dr. Hall provided this opinion. He argues, however, that "the State failed to sustain its burden" of proving, beyond a reasonable doubt, that A.S. suffered serious emotional injury because Dr. Hall also testified that A.S. was "cheerful," acted differently than what he would expect from someone who had suffered serious emotional injury, and told him that she thought Mr. Hobbs was "playing" with her. Mr. Hobbs asserts that this testimony "belies [Dr. Hall's] answer" that A.S. suffered serious emotional injury. In effect, Mr. Hobbs is really arguing that the jury's verdict is against the weight of the evidence.

Mr. Hobbs argument fails for three reasons. First, Dr. Hall's testimony about A.S.'s behavior does not refute his testimony that she suffered serious emotional harm. Instead, the facts that A.S. was not upset by Mr. Hobbs' actions and that she interpreted his abuse of her as play led to Dr. Hall's assessment that her response to the abuse was inappropriate, which was the basis for his opinion that she suffered serious emotional injury. Second, even if Dr. Hall's testimony about A.S.'s behavior had contradicted his opinion that she suffered serious emotional injury, the jury could have believed the portion of his testimony where he stated that she suffered a serious emotional injury. The jury, as fact finder, may choose to accept or reject all, some, or none of the testimony of any witness. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). Finally, the weight of a witness's testimony is for the jury, not the appellate court, to determine. *State v. Gunn,* 57 S.W.3d 347, 350 (Mo.App.2001). " 'Weighing the evidence to determine whether the defendant was guilty beyond a reasonable doubt is the role of the jury and not the function of the reviewing court.' Credibility and weight of testimony are matters for the jury to determine[.]" *Id.* (quoting *State v. Simpson,* 718 S.W.2d 143, 146 (Mo.App.1986)). Therefore, Mr. Hobbs second point is denied.

The judgment of the trial court is affirmed.

All concur.