# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1694

_____

Marcus Q. Davis,

        Appellant,

v.

United States of America,

        Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.
\*
\*
\*

_____

Submitted: January 9, 2012
Filed: March 14, 2012

_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Marcus Davis was convicted of one count of malicious use of fire causing personal injury and death, in violation of 18 U.S.C. § 844(i). He was sentenced to 360 months' imprisonment, and his conviction and sentence were affirmed on direct appeal. United States v. Davis, 534 F.3d 903 (8th Cir. 2008), cert. denied, 555 U.S. 1201 (2009). Davis sought habeas corpus relief under 28 U.S.C. § 2255, claiming that he received ineffective assistance of counsel at trial. The district court[1] denied his petition. We affirm.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

I.

The facts of this case are fully set forth in our opinion in Davis's direct appeal. See Davis, 534 F.3d at 906-11. Following are the facts relevant to the habeas appeal now before us. On March 6, 2000, a fire started at 845 Cross Park Avenue, an apartment building in Iowa City, Iowa. One resident of the building died as a result of the fire and another suffered serious burns. Police determined that the fire had been set intentionally, and they investigated the case for more than five years before Davis and Stephen Edwards were indicted in September 2005.

The evidence presented at the joint trial was largely circumstantial, with the exception of two incriminating statements, one by each defendant. The evidence showed that the fire was the culmination of an ongoing altercation between Davis and Jan Ballew, who lived in the apartment building and had repeatedly reported Davis to the police because of the volume of his music. Davis was not a resident of the burned apartment building, but his music was evidently audible to at least some of the building's residents. Joyce O'Neal testified that Davis had said to her, "I didn't mean for it—I didn't mean for it to happen like this. I was only trying to scare the old lady because every time our music—we would turn our music up, she would always call the police on us." Davis, 534 F.3d at 910. Betty Jo Thompson testified that Edwards had said to her, "It wasn't to hurt anybody, to murder anybody. It wasn't to kill anybody. It was to get someone to come out of the house." Id.

These statements were used as part of a visual display during the prosecution's closing argument without objection from Davis's counsel. As we recounted in Davis's direct appeal:

> Both defendants filed a motion in limine to prevent the government from using statements attributed to one defendant against the nondeclarant codefendant. The district court stated that it "anticipates that the

-2-

government will elicit testimony carefully to ensure that statements made by one defendant do not reference the non-declarant co-defendant." The district court permitted defense counsel to object to the admission of statements attributed to one of the defendants and allowed defense counsel to make the strategic choice whether they wanted to object at every opportunity or to object the first time a statement was admitted in the course of each witness's testimony. Defense counsel chose to object once per witness and to have the limiting instruction repeated at that time.

During the government's rebuttal closing argument, the prosecutor stated, "ladies and gentlemen, they even confessed to it." The prosecutor then displayed a demonstrative aid, which he referred to as "Exhibit K," even though it had not been admitted as a trial exhibit, and had not been published to defense counsel as required by the local rules. The aid consisted of a power point slide that showed side-by-side statements attributed to each of the defendants.

Davis, 534 F.3d at 910-911. The statements displayed were Davis's statement to O'Neal and Edwards's statement to Thompson. As the prosecutor finished his argument he said, "The government has proven beyond a reasonable doubt that Marcus Davis set a gasoline fire on the third floor of 845 Cross Park to scare the old lady. And Stephen Edwards was right there helping him. 'It wasn't meant to kill anybody.' And look how similar their statements are." Id. at 911.

Neither defendant objected to the prosecutor's statements or Exhibit K at trial. On direct appeal, Davis argued that his conviction should be reversed because the prosecutor's conduct during closing argument was improper and should have resulted in a mistrial. Specifically, Davis argued that the use of Exhibit K violated Bruton v. United States, 391 U.S. 123 (1968), in which the Supreme Court held that the admission of a non-testifying defendant's statement implicating a codefendant violates the codefendant's constitutional right to confront the witnesses against him, even if there is a curative instruction. Id. at 135-36.

In Davis's direct appeal, we concluded that "although we do not condone the manner in which the prosecutor utilized the previously undisclosed demonstrative aid," its use did not constitute a Bruton violation, the defendants were not deprived of a fair trial, and the district court did not abuse its discretion in denying the motion for a mistrial. Davis, 534 F.3d at 915-16. "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (quoting United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)). Thus, to the extent that Davis attempts to revive his claim that the prosecutor's actions constituted prosecutorial misconduct and a violation of Bruton, we will not revisit our prior decision. Davis may, however, argue that his counsel was ineffective for failing to object to the prosecution's use of Exhibit K in closing argument.

## II.

We review *de novo* the denial of a § 2255 motion and review any underlying factual findings for clear error. United States v. Hernandez, 436 F.3d 851, 854-55 (8th Cir. 2006) (citations omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on an ineffective assistance of counsel claim, a petitioner must (1) show that counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. Id. at 687-88.

We do not decide today whether Davis's counsel's failure to object during closing argument was objectively unreasonable because, whether reasonable or not, Davis was not prejudiced by counsel's conduct. See Tinajero-Ortiz v. United States, 635 F.3d 1100, 1104 (8th Cir. 2011) (quoting Strickland, 466 U.S. at 697) ("If it is

-4-

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). In order to show prejudice, a petitioner must show that there is a reasonable probability that but for the complained-of conduct the result would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

While we reiterate that we do not condone the manner in which the prosecutor utilized the previously undisclosed Exhibit K, we note that the content it displayed was properly admitted. Without the visual aid, the prosecutor could still have emphasized the admissions by the defendants in his closing argument. Had counsel objected, and assuming that the trial court would have sustained the objection, the jury would have been told to disregard Exhibit K and the prosecutor's remarks characterizing the defendants' statements as "similar." While an objection might have altered the manner in which the prosecution's closing argument was presented, it would not have altered the content of the argument itself or the evidence available for the jury's consideration. In addition, the jury had been properly instructed regarding the use of each defendant's statement:

> Before any evidence was presented, the district court informed the jury that the opening statements and closing arguments are intended to help the jury understand the evidence but are not themselves evidence. The statements attributed to the defendants in the government's closing argument were properly admitted, and the jury received several limiting instructions regarding the use of out-of-court statements. The district court also repeated its limiting instruction during the jury's final instructions, which the jury heard immediately before closing arguments, and it was included in the packet of instructions given to the jury.

Davis, 534 F.3d at 916.

Furthermore, while the other evidence against Davis was circumstantial it was not inconsiderable. Davis's ongoing dispute with his neighbor showed motive for setting the fire, he was in the area when the fire was started, he lied to the police about his name and changed his clothes multiple times in an attempt to evade identification the evening of the fire, and that same night Davis had said to Ballew and others that Ballew needed to "learn to get along with people." Id. at 907-09.

To prevail on this claim, Davis had to demonstrate that "there is a reasonable probability that, but for counsel['s] failure to object . . . the result of the proceeding would have been different." Sinisterra v. United States, 600 F.3d 900, 909 (8th Cir. 2010) (citing Middleton v. Roper, 455 F.3d 838, 849 (8th Cir. 2006)). Davis has not shown Strickland prejudice. Considering that the statements made by the defendants were properly admitted, that the jury was properly instructed, and that the other incriminating evidence available at trial was considerable, the failure of Davis's counsel to object during the prosecution's closing argument does not undermine our confidence in the outcome of the trial.

III.

The judgment is affirmed.

_____